**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RYAN PATRICK A.,[1]          ) Case No. EDCV 17-2526-JPR
                             )
           Plaintiff,        )
                             )
      v.                     ) **MEMORANDUM DECISION AND ORDER**
                             ) **AFFIRMING COMMISSIONER**
                             )
NANCY A. BERRYHILL, Acting   )
Commissioner of Social       )
Security,                    )
                             )
           Defendant.        )
_____)

**I.   PROCEEDNGS**

     Plaintiff seeks review of the Commissioner's final decision
denying his application for supplemental security income ("SSI").
The parties consented to the jurisdiction of the undersigned
under 28 U.S.C. § 636(c).  The matter is before the Court on the
parties' Joint Stipulation, filed August 16, 2018, which the
Court has taken under submission without oral argument.  For the

_____

     [1] Plaintiff's name is partially redacted in compliance with
Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
recommendation of the Committee on Court Administration and Case
Management of the Judicial Conference of the United States.

reasons stated below, the Commissioner's decision is affirmed.

**II.  BACKGROUND**

Plaintiff was born in 1977.  (Administrative Record ("AR") 69.)  He completed high school and some college.  (AR 51-52.)  He last worked as a "dry wall helper" and an "electrician helper" in 2004.  (AR 30, 41-43).[2]

On April 29, 2016, Plaintiff applied for SSI, alleging that he had been unable to work since January 1, 2000, because of "[a]rtificial hip — mass pain in back can't walk," stage-four bone cancer, back pain, leg pain, hip pain, "[f]emur [r]eplacement," hip replacement, "[h]igh level of pain killer impairs some mental function," and "[h]igh pain levels causes [sic] lack of sleep."  (AR 69-70.)  After his application was denied initially (AR 80, 96-97) and on reconsideration (AR 93, 106-07), he requested a hearing before an Administrative Law Judge (AR 112-13).  A hearing was held on February 8, 2017, at which he was represented by counsel and testified.  (AR 40-61, 67-68.)  A vocational expert also testified.  (AR 61-67.)

In a written decision issued March 24, 2017, the ALJ found Plaintiff not disabled since April 29, 2016, the application date.  (See AR 19, 31; see also generally AR 19-32.)  Plaintiff requested review from the Appeals Council (AR 160), which denied it on July 6, 2017 (AR 5-7).  This action followed.

---

[2] His earnings summary indicates he performed some work in 2005.  (See AR 166).

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

1          A.    The Five-Step Evaluation Process

2          The ALJ follows a five-step sequential evaluation process to

3     assess whether a claimant is disabled.    20 C.F.R.

4     § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir.

5     1995) (as amended Apr. 9, 1996).    In the first step, the

6     Commissioner must determine whether the claimant is currently

7     engaged in substantial gainful activity; if so, the claimant is

8     not disabled and the claim must be denied.    § 416.920(a)(4)(i).

9          If the claimant is not engaged in substantial gainful

10    activity, the second step requires the Commissioner to determine

11    whether the claimant has a "severe" impairment or combination of

12    impairments significantly limiting his ability to do basic work

13    activities; if not, the claimant is not disabled and his claim

14    must be denied.    § 416.920(a)(4)(ii).

15         If the claimant has a "severe" impairment or combination of

16    impairments, the third step requires the Commissioner to

17    determine whether the impairment or combination of impairments

18    meets or equals an impairment in the Listing of Impairments set

19    forth at 20 C.F.R. part 404, subpart P, appendix 1; if so,

20    disability is conclusively presumed.    § 416.920(a)(4)(iii).

21         If the claimant's impairment or combination of impairments

22    does not meet or equal an impairment in the Listing, the fourth

23    step requires the Commissioner to determine whether the claimant

24    has sufficient residual functional capacity ("RFC")[3] to perform

25

26         [3] RFC is what a claimant can do despite existing exertional
      and nonexertional limitations.    § 416.945; see also Cooper v.
27    Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).    The
      Commissioner assesses the claimant's RFC between steps three and
28                                                      (continued...)

                                        4

his past work; if so, he is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.     The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, April 29, 2016. (AR 21.) At step two, she determined that he had severe impairments of "skeletal system sarcoma of the right hip and femur," "status post reconstructive surgery of the right hip and femur," "degenerative disc disease of the cervical spine," "lumbar spondylosis," "ADHD," "affective disorder," and "anxiety disorder." (Id.)

At step three, she found that Plaintiff's impairments did not meet or equal a listing. (AR 21-23.) At step four, she

---

[3] (...continued)
four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

concluded that he had the RFC to perform "light work"[4] with some
limitations:

> Specifically, the claimant can lift and/or carry ten
> pounds occasionally and ten pounds frequently; he can
> push and/or pull as much as he can lift and/or carry; he
> can sit for six hours in an eight[-]hour workday; he can
> stand for four hours in an eight-hour workday; he can
> walk for two hours in an eight-hour workday; he must have
> a sit or stand option to perform work either sitting or
> standing with no more that three position changes per
> hour; he can occasionally climb ramps and stairs; he can
> never climb ladders, ropes, or scaffolds; he can
> occasionally balance, stoop, kneel, crouch, and crawl; he
> can never work at unprotected heights or with moving
> mechanical parts; he can occasionally be exposed to
> extreme cold or extreme heat; he can occasionally be
> exposed to vibrations; he is limited to perform[ing]
> simple and routine tasks; and, he would be absent from
> work one day per month.

(AR 23.)  Based on the VE's testimony, the ALJ concluded that
Plaintiff could not perform his past relevant work.  (AR 30.)

At step five, she found that given Plaintiff's age,

---

[4] "Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to
10 pounds."  § 416.967; see also SSR 83-10, 1983 WL 31251, at *5
(Jan. 1, 1983) ("[A] job is in this category when it requires a
good deal of walking or standing . . . [or] when it involves
sitting most of the time but with some pushing and pulling of
arm-hand or leg-foot controls, which require greater exertion
than in sedentary work.").

education, work experience, and RFC, and "[b]ased on the
testimony of the vocational expert" (AR 31), he could perform at
least two representative jobs in the national economy: mail
clerk, DOT 209.687-026, 1991 WL 671813 (Jan. 1, 2016), and
marker, DOT 209.587-034, 1991 WL 671802 (Jan. 1, 2016).  (AR 31.)
Accordingly, she found him not disabled.  (Id.)

**V.    DISCUSSION**[5]

    Plaintiff argues that the ALJ erred (1) in identifying two
jobs at step five that allegedly conflicted with his RFC (J.
Stip. at 5-7, 11-12) and (2) in failing to order a consultative
examination to develop the record on his mental impairments (id.
at 12-15, 19-22).

    A.    Remand Is Not Warranted Based on Harmless Error at Step
          Five

    Plaintiff contends that the ALJ failed to properly address
and resolve two conflicts between the VE's testimony and the DOT
regarding the requirements of the jobs he was found able to
perform.  (Id. at 5-7.)  As explained below, the ALJ committed
harmless error at step five, and remand is not necessary.

---

    [5] In Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018), the Supreme
Court held that ALJs of the Securities and Exchange Commission
are "Officers of the United States" and thus subject to the
Appointments Clause.  To the extent Lucia applies to Social
Security ALJs, Plaintiff has forfeited the issue by failing to
raise it during his administrative proceedings.  (See AR 37-68,
160); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as
amended) (plaintiff forfeits issues not raised before ALJ or
Appeals Council); see also generally Kabani & Co. v. SEC, 733 F.
App'x 918, 919 (9th Cir. 2018) (rejecting Lucia challenge because
plaintiff did not raise it during administrative proceedings),
pet. for cert. filed, __ U.S.L.W. __ (U.S. Feb. 22, 2019) (No.
18-1117).

1          1.  <u>Applicable law</u>

2        At step five, the Commissioner has the burden of showing the

3   existence of work in the national economy that the claimant can

4   perform, taking into account his age, education, and vocational

5   background.  See Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir.

6   2001).  To meet this burden, the ALJ must "identify specific jobs

7   existing in substantial numbers in the national economy that

8   claimant can perform despite his identified limitations."

9   Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

10       When a VE provides evidence at step five about the

11  requirements of a job, the ALJ has a responsibility to ask about

12  "any possible conflict" between that evidence and the DOT's job

13  description.  See SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4,

14  2000); Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007)

15  (holding that application of SSR 00-4p is mandatory).  When such

16  a conflict exists, the ALJ may accept VE testimony that

17  contradicts the DOT only if the record contains "persuasive

18  evidence to support the deviation."  Pinto, 249 F.3d at 846

19  (citing Johnson, 60 F.3d at 1435); see also Tommasetti v. Astrue,

20  533 F.3d 1035, 1042 (9th Cir. 2008) (finding error when "ALJ did

21  not identify what aspect of the VE's experience warranted

22  deviation from the DOT").  A conflict with the DOT must be

23  "obvious or apparent" to require inquiry by the ALJ.  See

24  Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016); Massachi,

25  486 F.3d at 1154 n.19.  A conflict is obvious or apparent when it

26  is at odds with DOT job requirements related to tasks that are

27  "essential, integral, or expected parts of a job."  Gutierrez,

28  844 F.3d at 808.

                                   8

Any error in failing to resolve a conflict with the DOT is harmless if the ALJ has identified another job existing in significant numbers that the Plaintiff could perform and as to which there was no error. See Shaibi v. Berryhill, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017) (as amended Feb. 28, 2018). When a hypothetical includes all the claimant's credible functional limitations, an ALJ is generally entitled to rely on the VE's response to it. See Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002); see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony.").

### 2. Relevant background

The ALJ asked the VE to assume a hypothetical individual with Plaintiff's age, education, and work background, with the following limitations:

> [T]his individual can occasionally lift and carry [10 pounds and also 10 pounds frequently]. This individual can sit for up to six hours in an eight-hour day, stand for up to four hours in an eight-hour day, walk for up to two hours in an eight-hour day. However, this individual requires a job that can be performed either sitting or standing, but with no more than three position changes per hour.
>
> This individual is limited to occasional posturals with the exception of climbing ladders, ropes and scaffolds, which is precluded. This individual should have no exposure to unprotected heights or moving mechanical parts and with no more than occasional

exposure to extreme cold, extreme heat or vibrations.
This individual is limited to performing simple, routine
tasks.

(AR 63-64.)  The individual would miss one day of work a month.
(AR 65.)  The VE testified that such an individual could work as
a "mail clerk . . . DOT 209.687-026," 1991 WL 671813, or "marker
. . . DOT 209.587-034," 1991 WL 671802.  (AR 64-65.)  The VE
confirmed that her testimony was "consistent with the [DOT]"
except that the latter did not include information concerning
absences, and she based that testimony on her more than 24 years
of experience in the field.  (AR 66-67.)  Plaintiff's attorney
did not question the VE when given the opportunity.  (See AR 66.)

3.  Analysis

a.  *Mail clerk*

Plaintiff correctly notes that work as a mail clerk, which
has a reasoning level of three,[6] fails to meet the ALJ's
limitation to "simple, routine tasks."  (See J. Stip. at 5-7; AR
23.)  Indeed, "there is an apparent conflict between [a]
limitation to simple, routine, or repetitive tasks . . . and the
demands of Level 3 reasoning."  Zavalin v. Colvin, 778 F.3d 842,
843-44 (9th Cir. 2015).  In such situations, the ALJ must
"reconcile the inconsistency" by "ask[ing] the expert to explain
the conflict" and then "determin[ing] whether the vocational

---

[6] Level-three reasoning means that an individual must be
able to "[a]pply commonsense understanding to carry out
instructions furnished in written, oral, or diagrammatic form"
and "[d]eal with problems involving several concrete variables in
or from standardized situations."  DOT, app. C, 1991 WL 688702
(4th ed. 1991).

10

expert's explanation . . . is reasonable." <u>Id.</u> at 846 (citation omitted).

The VE failed to note, and the ALJ failed to address, the conflict between the DOT description of the mail-clerk job and Plaintiff's limitation to simple and routine tasks. (<u>See</u> <u>generally</u> AR 61-67.) Defendant apparently concedes the error. (<u>See</u> J. Stip. at 10-11.) As explained below, however, the ALJ's error was harmless in light of her alternative finding that Plaintiff could perform the requirements of the marker job. <u>See</u> <u>Shaibi</u>, 883 F.3d at 1110 n.7 (finding harmless ALJ's error in failing to resolve conflict between job requiring level-three reasoning and RFC limiting plaintiff to simple, repetitive tasks because ALJ had found he could perform two other identified jobs available in sufficient numbers); <u>Revard v. Colvin</u>, No. ED CV 12-1386 MRW., 2013 WL 2045760, at *4 (E.D. Cal. May 13, 2013) (finding harmless ALJ's error in failing to resolve conflict between mail-clerk job and RFC limiting plaintiff to simple tasks because he could perform another identified job available in national economy).

    b.  *Marker*

Plaintiff argues that the DOT description for the marker job conflicts with his RFC because some of its identified tasks are not "routine." (J. Stip. at 6-7, 12.) The DOT recounts "marker" duties as follows:

> Marks and attaches price tickets to articles of
> merchandise to record price and identifying information:
> Marks selling price by hand on boxes containing
> merchandise, or on price tickets. Ties, glues, sews, or

11

staples price ticket to each article.  Presses lever or
plunger of mechanism that pins, pastes, ties, or staples
ticket to article.  May record number and types of
articles marked and pack them in boxes.  May compare
printed price tickets with entries on purchase order to
verify accuracy and notify supervisor of discrepancies.
May print information on tickets, using ticket-printing
machine[.]

DOT 209.587-034, 1991 WL 671802.  The marker job requires
reasoning level two.[7]  Id.  The DOT description for it lists the
temperament factor of "[a]ttaining precise set limits,
TOLERANCES, and standards."  Id.  "Temperaments . . . are the
adaptability requirements made on the worker by specific types of
jobs."  U.S. Dep't of Labor, Revised Handbook for Analyzing Jobs
10-1 (1991).[8]  They have been found to be "important to
adjustments workers must make for successful job performance."
Veal v. Soc. Sec. Admin., 618 F. Supp. 2d 600, 610 & n.24 (E.D.
Tex. May 21, 2009) (citing Revised Handbook 10-1).

Plaintiff claims that the marker job's inclusion of "the
temperament to attain precise set limits, tolerances or

---

[7] Level-two reasoning means that an individual must be able
to "[a]pply commonsense understanding to carry out detailed but
uninvolved written or oral instructions" and "[d]eal with
problems involving a few concrete variables in or from
standardized situations."  DOT, app. C, 1991 WL 688702 (4th ed.
1991).

[8] The Revised Handbook for Analyzing Jobs lists "11
[t]emperament factors identified for use in job analysis."
Revised Handbook 10-1.  The marker job requires only two, one of
which is not at issue here.

standards" conflicts with his RFC requirement that work be
"routine." (J. Stip. at 7.) He cites no authority to support
the argument and fails to give any detail of the purported
conflict; indeed, he never even explains what the language in the
DOT means. (Id.) The Revised Handbook Analyzing Jobs provides
some guidance; it describes attaining precise set limits,
tolerances, and standards as "[i]nvolv[ing] adhering to and
achieving exact levels of performance, using precision measuring
instruments, tools, and machines to attain precise dimensions;
preparing exact verbal and numerical records; and complying with
precise instruments and specifications for materials, methods,
procedures, and techniques to attain specified standards."
Revised Handbook 10-4. The temperament has been interpreted as
barring fast-paced or production-quota work. see Sandra H. v.
Comm'r of Soc. Sec., No.: 2:17-CV-403-FVS, 2019 WL 289811, at *7
(E.D. Wash. Jan. 22, 2019).

There is no obvious or apparent conflict between a
limitation to "routine" tasks and having the temperament to
attain precise set limits, tolerances, and standards; rather,
that language would conflict with an RFC barring fast-paced or
production-quota work, see id., which Plaintiff does not have.
In any event, the DOT description for marker lists such routine
tasks as attaching price tags, recording price information, and
verifying accuracy, DOT 209.587-034, 1991 WL 671802, all of which
are consistent with using tools, preparing numerical records, and
complying with methods and procedures to meet certain standards,
see Revised Handbook 10-4. And the temperament for attaining
precise set limits, tolerances, and standards must be read in

13

conjunction with the marker job's need for only level-two
reasoning, which "specifically caveats that the instructions
would be uninvolved — that is, not a high level of reasoning."
Meissl v. Barnhart, 403 F. Supp. 2d 981, 985 (C.D. Cal. 2005)
(citation omitted); see also id. at 983-85 (holding that
reasoning-level-two jobs are consistent with limitation to
"simple, repetitive" tasks). Thus, nothing indicates that
Plaintiff could not perform work that was "essential, integral,
or expected" in the marker job. Gutierrez, 844 F.3d at 808; see
also Blackmon v. Astrue, 719 F. Supp. 2d 80, 99 (D.D.C. 2010)
(rejecting argument that work requiring temperament to attain
precise set limits, tolerances, and standards was inconsistent
with limitation to "routine" work); Lewis v. Astrue, No. CV 08-
3823-JTL., 2009 WL 890724, at *8-9 (C.D. Cal. Mar. 31, 2009)
(finding that limitation to simple and repetitive work did not
prevent plaintiff from performing job that required attaining
precise set limits, tolerances, and standards). Because there
was no obvious or apparent conflict between the VE's testimony
and the DOT, there was nothing for the ALJ to reconcile, and she
was not required to question the VE about the purported
discrepancy. See Gutierrez, 844 F.3d at 807-08.

Accordingly, the ALJ appropriately determined that Plaintiff
could perform the marker job, and any error as to the mail-clerk
position was harmless.

14

B. **Plaintiff Has Forfeited His Claim that the ALJ Failed to Properly Develop the Record, and No Manifest Injustice Results from Failing to Consider It**

Plaintiff claims that the ALJ should have ordered a consultative examination concerning his mental symptoms because the record was "woefully underdeveloped." (J. Stip. at 15.) Plaintiff has forfeited this claim, and in any event the ALJ likely did not err.

1. Applicable law

In Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended), the Ninth Circuit held that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal" or those issues are forfeited. Indeed, when a claimant fails entirely to raise an issue before both the ALJ and the Appeals Council, he "forfeits such a challenge on appeal, at least when that claimant is represented by counsel." Shaibi, 883 F.3d at 1109; see also Phillips v. Colvin, 593 F. App'x 683, 684 (9th Cir. 2015) (finding that "issue was waived[9] by [claimant]'s failure to raise it at the administrative level when he was represented by counsel").

Courts "will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice[.]" Meanel, 172

---

[9] Some of the cases refer to "waiver," although the issue is actually forfeiture. See United States v. Scott, 705 F.3d 410, 415 (9th Cir. 2012) ("Waiver is the intentional relinquishment or abandonment of a known right, whereas forfeiture is the failure to make the timely assertion of that right." (citation and alterations omitted)).

F.3d at 1115. "A manifest injustice is . . . an error in the trial court that is direct, obvious, and observable[.]" Sanchez v. Berryhill, No. 1:15-cv-00510-EPG, 2017 WL 1709326, at *3 (E.D. Cal. May 3, 2017) (citation omitted); see also Goodman v. Colvin, No. CV-15-00807-PHX-JAT, 2016 WL 4190738, at *17–18 (D. Ariz. Aug. 9, 2016) (no manifest injustice in forfeiture of claim when plaintiff failed to question VE about conflicts between RFC limitations and DOT); Hinkley v. Colvin, No. CV-15-00633-PHX-ESW, 2016 WL 3563663, at *10 n.7 (D. Ariz. July 1, 2016) (no manifest injustice in forfeiture of claim when plaintiff failed to challenge weight ALJ gave medical assessment); cf. Jones v. Colvin, No.: 2:15-cv-09489 KS, 2016 WL 4059624, at *3 & n.2 (C.D. Cal. July 27, 2016) (finding manifest injustice when ALJ failed to reconcile RFC with DOT job description because Ninth Circuit had found "an apparent conflict between the [RFC] to perform simple, repetitive tasks and the demands of Level Three Reasoning" (citation omitted)).

      2. Analysis

As Defendant argues (see J. Stip. at 15-16), Plaintiff never raised the ALJ's purported failure to develop the record concerning his mental health during the administrative process. He didn't raise it at his hearing on February 8, 2017. (See generally AR 39-68.) To the contrary, when the ALJ twice asked his attorney if the record was complete, she responded that it was. (AR 39-40.) Plaintiff himself testified that his mental issues were ancillary to his "main problem," his hip, and that he wouldn't seek disability benefits based just on his mental issues. (AR 45.) After the hearing, Plaintiff's attorney

16

confirmed in writing that she was seeking no additional development of the record. (AR 248.) Nor did Plaintiff raise the issue with the Appeals Council. (See AR 160.) As he is and always has been represented by counsel, his failure to raise the issue during the administrative process forfeits his right to make such a claim before this Court. See Shaibi, 883 F.3d at 1109; Phillips, 593 F. App'x at 684.

Plaintiff contends that he has not forfeited the issue because Meanel concerns statistical data provided by the VE and is thus distinguishable. (J. Stip. at 19-20.) He is mistaken, however, as "[c]ourts in this circuit have applied Meanel in a variety of factual contexts, including the waiver of an argument that the mental health record should have been developed further by the ALJ." Redmond v. Berryhill, No. 17-cv-01603-DMR, 2018 WL 3219437, at *14 (N.D. Cal. July 2, 2018) (holding plaintiff to have waived that issue (citing Johnson v. Colvin, No. ED CV 15-02239 AFM, 2016 WL 4208434, at *3 (C.D. Cal. Aug. 8, 2016) (relying on Meanel and holding that "[n]either Plaintiff nor his counsel suggested that the ALJ . . . should send Plaintiff to a mental evaluation, or should further develop the record in any other way. As such, Plaintiff waived any arguments on [this issue]."))); see also Shaibi, 883 F.3d at 1109 (finding Meanel not limited to its facts).

Accordingly, Plaintiff has forfeited his claim that the ALJ should have developed the record concerning his mental health.

3.    In any event, the ALJ was under no duty to further
        develop the record, and no manifest injustice
        requires reversal

Even if Plaintiff could properly raise the argument that the ALJ had a duty to develop the medical record and order a consultative examination (J. Stip. at 13-15, 20-22), it would likely fail.  An ALJ has a "duty to fully and fairly develop the record" and "assure that [a] claimant's interests are considered."  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.").  But it nonetheless remains the claimant's burden to produce evidence in support of his disability claim.  See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (as amended).  Moreover, the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (as amended) (citation omitted).

Plaintiff claims that a consultative examination was necessary because a "forensic description of [Plaintiff's] symptoms and limitations does not appear in the treating record . . . [and] [t]hat type of highly technical or specialized medical evidence is simply not available from the treating source."  (J. Stip. at 15.)  There was nothing ambiguous or inadequate about the record here, however, that demonstrated a need for such "forensic" evidence.  Rather, as the ALJ noted (AR

22), notes from Plaintiff's visits to his treating psychiatrist indicated that his mental impairments were not severely limiting and were well controlled with medication.  (See, e.g., AR 509 (Aug. 9, 2016, "good effect" from medication), 279 (Dec. 22, 2015, seen for "[m]ild depressed feelings" and to get ADHD medication that was "useful for him in the past"), 283 (July 30, 2015, "absence of depression" and some insignificant anxiety), 293 (Dec. 4, 2014, "[n]ot currently depressed and anxiety has not been a problem"), 301 (June 24, 2014, "stable" mood, "[a]nxiety is not much of a problem," and "[n]ot currently depressed"), 312 (Dec. 18, 2013, stable mood and concentration "OK"), 328 (June 20, 2013, had "done well" since last appointment and "mild depression"), 333 (Oct. 3, 2012, "doing well since last appointment" and "[m]ood stable without antidepressants"), 337 (May 22, 2012, "mood is stable currently").)

Similarly, as the ALJ explained (AR 22), Plaintiff's testimony and treatment notes demonstrate that he was functioning well, with at most moderate limitations resulting from his psychiatric impairments.  (AR 21-23.)  During the alleged disability period, he was able to attend college courses and maintain good grades (AR 52-53); travel (AR 296, 299, 307, 330), including a month spent in Europe with a friend (AR 58-59) and other overseas trips (AR 296, 537, 541); drive (AR 51, 60, 494); exercise regularly (AR 57, 285, 318); and do occasional grocery shopping (AR 51).  He provided a detailed history of his ailments to the physical-health consulting examiner (AR 494-95), and the ALJ described him as "adher[ing] to proper hearing decorum" and able to "respond to questions appropriately and without delay"

19

while testifying (AR 22).  Moreover, as the ALJ noted (AR 28),
Plaintiff told one treating doctor during the alleged disability
period that he saw no benefit to working a low-paying job that
wouldn't support his desired lifestyle of "put[ting] a lot of
time into music and working out."  (AR 364.)  And he testified
that his mental issues were not his "main problem" and wouldn't
alone render him disabled.  (AR 45.)

Thus, the ALJ had no duty to develop the record further.
See Meltzer v. Colvin, No. CV 13-6164 AGR., 2014 WL 2197781, at
*4 (C.D. Cal. May 27, 2014) (finding that ALJ did not violate
duty to develop record by not ordering psychiatric consulting
examination because record was neither ambiguous nor inadequate
and showed that claimant's schizophrenia "was stable and well
controlled by medication"); Walsh v. Astrue, No. EDCV 11-170
AGR., 2012 WL 425331, at *4 n.5 (C.D. Cal. Feb. 10, 2012)
(finding that ALJ did not violate duty to develop record by not
ordering psychiatric consulting examination or medical-expert
testimony because record was neither ambiguous nor inadequate and
ALJ thoroughly discussed "plethora" of mental-health records).[10]

---

[10] In the final paragraph of Plaintiff's reply argument, he
claims without support that simply by filing this appeal he has
somehow automatically challenged the ALJ's credibility finding.
(J. Stip. at 22.)  Yet he never identified that as a separate
issue, as many such disability plaintiffs routinely do.  Because
he "failed to argue this issue with any specificity in his
briefing," it is forfeited.  See Carmickle v. Comm'r, Soc. Sec.
Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (failure to
challenge ALJ's adverse credibility finding forfeits claim
(citing Paladin Assocs., Inc. v. Mont. Power Co., 328 F.3d 1145,
1164 (9th Cir. 2003) (noting that court "ordinarily will not
consider matters on appeal that are not specifically and
(continued...)

## VI. CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for payment of benefits or remand, and DISMISSING this action with prejudice.

DATED: March 27, 2019

_____
JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[10] (...continued)
distinctly argued in an appellant's opening brief")")).

[11] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

21